UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARGIE H. LEDET                                                                                   PLAINTIFF

VERSUS                                                       CIVIL ACTION NO. 2:19CV70-KS-RPM

COMMISSIONER OF
SOCIAL SECURITY                                                                              DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDATION**

Plaintiff Margie H. Ledet filed the instant complaint for review of the United States Social Security Administration Commissioner's (Commissioner) denial of her application for disability insurance benefits. Doc. [1]. She alleged a disability, with an onset date of September 1, 2011, based on impairments of bulging discs with constant pain, infections in breasts, lymphedema, tumor on uterus, and chest pains. Doc. [6] at 92. The Commissioner denied Plaintiff's initial application and on reconsideration. *Id.* at 113-14, 117-21. Plaintiff then requested and was granted a hearing before an administrative law judge (ALJ). *Id.* at 123-24, 126-27.

The ALJ conducted a hearing, which included testimony from the Plaintiff and a vocational expert. *Id*. at 41-90. The ALJ issued a decision on July 2, 2018, finding Plaintiff was not disabled. *Id.* at 19-33. The ALJ concluded Plaintiff had severe impairments of lumbar and thoracic degenerative disc disease and depression. *Id.* at 21-22. However, the ALJ determined that Plaintiff maintained the residual functional capacity (RFC) to perform sedentary work with numerous additional restrictions. *Id.* at 24. She requires a cane. She can walk for two hours in an eight-hour workday. She can frequently operate hand controls. She can never reach overhead

with either upper extremity but can frequently reach in all directions.  She can occasionally climb ramps and stairs but no more than a few steps; otherwise, she needs a ramp.  She can never climb ladders, ropes, and scaffolds.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She cannot work at unprotected heights or around moving mechanical parts.  She can never operate a motor vehicle or work in extreme heat or cold.  She is limited to performing simple routine, repetitive tasks but not at a production rate (e.g. assembly line work).  She is limited to simple work-related decisions.  She can occasionally interact with coworkers but she cannot work with the general public.

Based on Plaintiff's limitations, the ALJ concluded she was unable to perform any past relevant work.  Doc. [6] at 31.  Relying in part on the testimony of a vocational expert, the ALJ concluded that jobs exist in significant numbers in the national economy that Plaintiff is capable of performing.  *Id.* at 31-32.  Accordingly, the ALJ found she is not disabled.  *Id.* at 32.  Plaintiff filed a request for review by the Appeals Council.  The Appeals Council denied the request.  *Id.* at 5-7.

Having exhausted administrative remedies, Plaintiff filed the instant complaint.  Before the Court is Plaintiff's motion for summary judgment.  Doc. [7].  She argues (1) the ALJ's severity finding at step 2 is not supported by substantial evidence because it fails to identify as severe impairments Plaintiff's status post double mastectomy operations, Somatic Symptom Disorder, complex with predominant pain or pain disorder with associated psychological factors and general medical conditions; and (2) the ALJ improperly assigned great weight to the opinion of Dr. Vohra without consideration of that opinion's limitation to Plaintiff's spinal problems.  Doc. [7].  The Commissioner has filed a motion to affirm.  Doc. [9].

## **Law and Analysis**

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §

404.1520(a), § 404.920(a).  Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work.  *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step.  *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987).  Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy.  The burden then shifts back to the claimant to establish that he cannot perform this alternative employment.  *Id.*

### **Severe Impairments**

Plaintiff argues the ALJ erred when he failed to identify as severe impairments chest pain related to her double mastectomy surgery (chest pain) and Somatic Symptom Disorder, Complex with Predominant Pain or pain disorder with associated psychological factors and general medical condition as severe impairments (Somatic Symptom Disorder).  Plaintiff contends the ALJ failed to conduct a severity analysis with respect to these two conditions and thus failed to account for them in the RFC.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  In *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), the Fifth Circuit held that an ALJ must reference *Stone* or the correct severity standard, which provides that "an

impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1011.  In this case the ALJ did cite to *Stone v. Heckler* and recited the appropriate standard of severity.  Doc. [6] at 20.

As an initial matter, it is not clear the ALJ failed to take into consideration the potential severity of Plaintiff's chest pain and Somatic Symptom Disorder.  With respect to chest pain, the ALJ concluded that Plaintiff suffered from the severe impairment of lumbar and thoracic degenerative disc disease.  Raul Vohra, M.D., conducted an independent medical evaluation and concluded that, from the perspective of Plaintiff's thoracic and lumbar spine, she is limited to light work.  He identified her chief pain complaint as chest pain, which would be consistent with post-mastectomy pain syndrome.  However, Dr. Vohra stated, "I think it would be impossible to delineate restrictions based on her post-mastectomy pain versus her thoracic pain versus her lumbar pain."  Doc. [6] at 1183.  In devising an RFC, the ALJ gave great weight to Dr. Vohra's opinion.  *Id.* at 30.  Thus, the medical opinion evidence considered by the ALJ indicates that, with respect to restrictions, Plaintiff's chest pain is inseparable from her thoracic and lumbar pain.  Accordingly, in effect, the ALJ's finding that Plaintiff suffered from a severe impairment as a result of thoracic and lumbar disc disease incorporates consideration of Plaintiff's chest pain.

With respect to Plaintiff's Somatic Symptom Disorder, the ALJ did not specifically identify this particular condition in the severity analysis.  However, at step 2, the ALJ generally considered the severity of Plaintiff's "mental impairment" and conducted the requisite analysis.  Doc. [6] at 22-24.  Based on this detailed analysis, the ALJ found that Plaintiff had a severe

mental impairment—depression. This conclusion is supported by substantial evidence, because Geralyn Datz, PhD., who performed an independent medical examination, concluded that Plaintiff suffered from depression related to issues including body disfigurement and chronic pain. *Id.* at 1189-1213. Likewise, John Clemmons, PhD., opined that Plaintiff suffered from major depressive disorder. *Id.* at 1214-15. The ALJ considered and relied on the opinions of Drs. Datz and Clemmons when determining the extent of Plaintiff's impairment. *See id.* at 28-30.

Assuming arguendo that the ALJ erred in failing to address specifically the conditions of chest pain and Somatic Symptom Disorder in the step 2 severity analysis, the error in and of itself does not justify remand, because the severity or non-severity of these conditions ultimately was not determinative of Plaintiff's disability. At step 2, the ALJ found Plaintiff had the severe impairments of lumbar and thoracic degenerative disc disease and depression. Thus, the ALJ found that Plaintiff prevailed at step 2 and then proceeded to the remaining steps when evaluating Plaintiff's claim of disability. The severity or non-severity of Plaintiff's physical and mental impairments by themselves do not provide a basis for remand. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Shipley v. Sec'y of Health & Human Servs.*, 812 F.2d 934, 935 (5th Cir. 1987).

The undersigned finds substantial evidence supports the ALJ's decision not to include the specific conditions of chest pain and Somatic Symptom Disorder as severe impairments. First, with regard to chest pain, the ALJ gave great weight to the opinion of Dr. Vohra, who considered Plaintiff's chest pain in his evaluation and concluded that he could not delineate restrictions separate from Plaintiff's lumbar and thoracic spine conditions. Doc. [6] at 30, 1183.

Furthermore, agency physicians Drs. L. Zuniga and Glenn James, both considered Plaintiff's double mastectomy and chest pain in their evaluations but did not identify chest pain as a severe impairment. Rather, they identified degenerative disc disease as Plaintiff's primary severe impairment. *Id.* at 95, 107. Indeed, both physicians determined that Plaintiff was capable of performing light work. *See id.* at 92-99; 102-10. The ALJ gave great weight to their opinions as well. *Id.* at 31. Ultimately, the ALJ assigned even greater limitations than those suggested by the physicians in that he found Plaintiff capable of sedentary work. *Id.* at 24.

In addition to considering Plaintiff's mental impairment generally, the ALJ also specifically addressed Plaintiff's Somatic Symptom Disorder as part of the RFC analysis. *Id.* 28-29. Dr. Datz performed an independent medical evaluation. *Id.* at 1189-1213. As recognized by the ALJ, tests conducted by Dr. Datz suggested somatic pain complaints and that Plaintiff might develop physical symptoms in response to stress. *Id.* at 29. According to Dr. Datz, Plaintiff had multiple somatic complaints. *Id.* Dr. Datz also concluded that Plaintiff appeared to suffer from major depressive disorder, as well as pain disorder with associated psychological factors. *Id.* As related by the ALJ, Dr. Datz opined that Plaintiff's condition did not preclude a return to work, but psychological factors did affect her ability to work. *Id.* at 30. Dr. Datz indicated Plaintiff should avoid high-level mental work and be in a low stress environment with breaks. *Id.* Dr. Datz also indicated Plaintiff's medication could limit her cognitive abilities. *Id.* In his decision, the ALJ addressed all of these findings from Dr. Datz.

The ALJ gave great weight to Dr. Datz's opinion and included appropriate non-exertional limitations in the RFC consistent with Plaintiff's mental impairment. *Id.* As such, he limited her to simple routine, repetitive tasks but not at a production rate (e.g. assembly line work); simple work-related decisions; only occasional interaction with coworkers; and no work with the

7

general public. *Id.* at 24. Thus, the ALJ considered Plaintiff's Somatic Symptom Disorder and its limiting effects, as addressed in Dr. Datz's report, and incorporated work restrictions accordingly. Dr. Datz's opinion constitutes substantial evidence in support of the ALJ's RFC.

### Dr. Vohra's Opinion

As a second point of error, Plaintiff argues the ALJ improperly assigned great weight to the opinion of Dr. Vohra without considering the fact that his opinion was limited only to Plaintiff's spinal problem. As explained earlier, Dr. Vohra in fact did consider Plaintiff's double mastectomy and chest pain when evaluating Plaintiff's limitations. He found it impossible to delineate restrictions for chest pain separate from the spinal conditions. Dr. Vohra then concluded Plaintiff was capable of light work. Moreover, two state agency physicians, also considered Plaintiff's double mastectomy and chest pain when evaluating her limitations and concluded she was capable of light work. The ALJ gave great weight to these opinions as well.

### Conclusion

At step 2, the ALJ concluded that Plaintiff's lumbar and thoracic conditions were severe; and he also gave a detailed assessment of Plaintiff's mental condition and determined she suffered from a severe mental impairment. Having concluded that Plaintiff established the existence of severe impairments at step 2, the ALJ proceeded to the other steps in the sequential analysis. Based on the ALJ's later analysis and finding of disability at step 5, any error in failing to include chest pain or Somatic Symptom Disorder as severe impairments at step 2 would be harmless. Moreover, the ALJ adequately considered the conditions of chest pain and Somatic Symptom Disorder and, to the extent appropriate, incorporated limitations into Plaintiff's RFC. Substantial evidence, in the form of medical opinion evidence, supports the ALJ's RFC assessment with respect to both conditions.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Plaintiff's [7] Motion for Summary Judgment be DENIED and that the Commissioner's [9] Motion to Affirm be GRANTED.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court.  A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections.  Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties.  A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 10th day of August 2020.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE